IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-287-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| STANLEY A. CRAFT, ) | |
| ) | |
| Defendant. ) | |

On July 10, 2019, the United States ("government," "Internal Revenue Service," "IRS," or "plaintiff") filed a complaint against Stanley Craft ("Craft" or "defendant") alleging that Craft willfully withheld taxes his company owed to the United States [D.E. 1]. On December 29, 2020, the government moved for summary judgment [D.E. 19] and filed documents in support [D.E. 20–22]. On March 22, 2021, Craft responded in opposition [D.E. 30]. On April 5, 2021, the government replied [D.E. 31]. As explained below, the court grants the government's motion for summary judgment.

I.

Craft is a software engineer and a resident of Wake County, North Carolina. See Compl. [D.E. 1] ¶ 4; Craft Aff. [D.E. 30-1] ¶ 1; Craft Dep. [D.E. 22-5] 4. In 1987, Craft and his wife founded a company called Microcraft Corporation ("Microcraft"). See Craft Dep. [D.E. 22-5] 4. Craft was Microcraft's president. See id. at 5; [D.E. 22-7] 11; Craft Aff. [D.E. 30-1] ¶ 3. The company had no board of directors. See Craft Dep. [D.E. 22-5] 5. Microcraft "developed automated test equipment for printed circuit board manufacturers." Id. at 4. Microcraft's equipment enabled circuit board manufacturers to test the operability of their circuit boards before shipping them. See

id. At one point, Microcraft also designed circuit boards. See id. at 9. At its peak, Microcraft employed sixteen or seventeen people and had $1.3 million in annual revenue. See id. at 4, 10.

As Microcraft's founder and president, Craft did "pretty much everything" for the company, including "[s]ales, some programming, leases, insurance, accounts payable, [and] accounts receivable." Id. at 4–5, 13; see [D.E. 22-7] 12; [D.E. 30-3] 1–2. Craft also had "final authority" on Microcraft's contracts, including contracts with customers, suppliers, and creditors. Craft Dep. [D.E. 22-5] 5–7. Craft also oversaw Microcraft's hiring and firing of employees. See id. at 5; [D.E. 30-3] 2. Furthermore, Craft maintained Microcraft's bank accounts. See Craft Dep. [D.E. 22-5] 11; [D.E. 22-7] 12; [D.E. 30-3] 2. Microcraft only had one bank account at a time, which it maintained at a bank where Microcraft also had a line of credit. See Craft Dep. [D.E. 22-5] 11.

Craft oversaw Microcraft's tax returns. At least during the late 1990s, Microcraft employed an accountant to prepare the company's quarterly tax returns, but otherwise the company prepared its tax returns internally. See id. at 10. Craft's role at Microcraft "included the preparation of, or facilitation of, the preparation of payroll tax returns on behalf of Microcraft." [D.E. 22-7] 13; see Craft Dep. [D.E. 22-5] 14. As the company's president, Craft signed Microcraft's quarterly tax returns from 1987 to 2005. See Craft Dep. [D.E. 22-5] 14; [D.E. 22-7] 9; [D.E. 30-3] 2–3. Craft signed and submitted quarterly returns to the IRS knowing that Microcraft had outstanding taxes due. See Craft Dep. [D.E. 22-5] 10. From 2001 to 2005, the relevant period in this case, Craft signed tax returns knowing Microcraft owed taxes that were due. See id. at 10, 12; [D.E. 30-3] 3. According to Craft, the company paid its taxes in 2001, but it did not pay its taxes from 2002 to 2005. See Craft Dep. [D.E. 22-5] 10. The unpaid taxes included unpaid employment taxes that Microcraft was supposed to withhold from employee's wages, also known as "trust fund taxes." See id. at 11–12. Craft knew the taxes were unpaid "when [he] didn't send the check" to the IRS. Id. at 14. Craft

2

commingled money to pay taxes with other company funds in Microcraft's single bank account. See id. at 11.

From 2001 to 2005, Mircocraft experienced financial difficulties because of a diminished market for its products due to a recession and increased competition from overseas. See id. at 7–8, 10–11; Craft Aff. [D.E. 30-1] ¶ 4. Microcraft's competitors suffered the same problems. See Craft Dep. [D.E. 22-5] 7. In 2005, Microcraft stopped operating and attempted to merge with a competitor, Consolidated Electronic Resources ("CER"), that was having similar problems. See id. at 8; [D.E. 30-3] 3, 5. Ultimately, the merger failed. See Craft Dep. [D.E. 22-5] 8–9. Although the merger failed, Craft and his employees took Microcraft's equipment to CER and began working there. See id.; [D.E. 30-3] 3. Craft worked for CER from 2006 to 2009. See Craft Dep. [D.E. 22-5] 9, 21; [D.E. 30-3] 5–6. North Carolina formally dissolved Microcraft in 2011. See [D.E. 22-6]. Neither Microcraft nor Craft ever made payments towards the unpaid trust fund taxes. See Craft Dep. [D.E. 22-5] 20–21; Billingsley Decl. [D.E. 22-1] ¶ 13.

In 2004, an IRS employee sent Microcraft several letters and asked Craft to meet at an IRS office in Raleigh, North Carolina. See Craft Dep. [D.E. 22-5] 17–18, 21. At the meeting, the employee and Craft discussed arranging an installment plan for Microcraft to pay its unpaid trust fund taxes. See id. at 18; [D.E. 30-3] 5. A fire alarm interrupted the meeting, and the meeting produced no agreement for an installment plan. See Craft Dep. [D.E. 22-5] 18; [D.E. 30-3] 5. In 2005, the same IRS employee came to the Microcraft office for a tour and to learn about Microcraft's equipment. See Craft Dep. [D.E. 22-5] 18, 21.

In 2007, the IRS sent Craft a letter giving Craft preliminary notice of the unpaid trust fund taxes and proposing to assess those unpaid taxes against him. See [D.E. 22-8]. Craft contends the IRS sent the letter to an address he no longer maintained, and he never received it. See [D.E. 30-3]

3

4. However, the IRS addressed the letter to 4129 Stells Road, Wake Forest, North Carolina, see [D.E. 22-8], where Craft says he has lived for the last 32 years and continues to reside. See Craft Dep. [D.E. 22-5] 3, 16. When Craft did not respond to the preliminary notice, the IRS assessed the unpaid trust fund taxes against him. See [D.E. 22-4]. The IRS sent Craft reminders of his unpaid balance on September 24, 2007, November 1, 2010, October 31, 2011, October 29, 2012, October 28, 2013, October 27, 2014, and November 2, 2015. See id. at 4.

In 2016, the IRS sent Craft a Notice of Intent to Levy the unpaid trust fund taxes. See Craft Aff. [D.E. 30-1] ¶ 9; [D.E. 31-1] ¶ 8. In 2018, Craft, through counsel, began to negotiate a payment arrangement with IRS employee Karl Weeman ("Weeman"). See Craft Aff. [D.E. 30-1] ¶¶ 11–12; [D.E. 31-1] ¶¶ 11–12. Weeman instructed Craft to complete an IRS Form 433-A so that Weeman could evaluate the possibility of a payment arrangement. See Craft Aff. [D.E. 30-1] ¶ 13; [D.E. 31-1] ¶ 13. Craft completed the Form 433-A, and Weeman provided Craft a possible monthly payment schedule. See Craft Aff. [D.E. 30-1] 3, 6–14; [D.E. 31-1] ¶¶ 14–15. When Craft's attorney tried to accept the monthly payment schedule, the IRS responded that it was unwilling to proceed. See Craft Aff. [D.E. 30-1] ¶ 16; [D.E. 31-1] ¶ 16. Craft and the IRS never reached an agreement on a monthly payment plan. Taking into account interest and statutory additions, Craft now owes $1,121,188.71. See Billingsley Decl. [D.E. 22-1] ¶¶ 11–12.

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence

4

of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 380.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

The government argues it is entitled to summary judgment as to the unpaid trust fund taxes assessed against Craft. See [D.E. 20] 7–12. Under federal law, employers must withhold income and social security taxes from their employees' wages. See 26 U.S.C. §§ 3102, 3402; Johnson v. United States, 734 F.3d 352, 359 (4th Cir. 2013); Erwin v. United States, 591 F.3d 313, 319 (4th Cir. 2010); Plett v. United States, 185 F.3d 216, 218 (4th Cir. 1999); Webb-Smith v. United States, No. 4:13-CV-5, 2014 WL 4322387, at *1 (E.D.N.C. Sept. 2, 2014) (unpublished). The employer then

5

holds the withheld wages in trust for the United States, hence the name "trust fund taxes." See 26 U.S.C. § 7501(a); Slodov v. United States, 436 U.S. 238, 243 (1978); Johnson, 734 F.3d at 359; Erwin, 591 F.3d at 319; Plett, 185 F.3d at 218; Webb-Smith, 2014 WL 4322387, at *1. Failure to pay trust fund taxes to the United States "is not excused merely because as a matter of sound business judgment, the money was paid to suppliers in order to keep the corporation operating as a going concern—the government cannot be made an unwilling partner in a floundering business." Erwin, 591 F.3d at 319 (cleaned up); see Collins v. United States, 848 F.2d 740, 741–42 (6th Cir. 1988).

When a company fails to remit trust fund taxes to the United States, federal law imposes personal liability on the company's officers or agents who are responsible for withholding and paying trust fund taxes. See 26 U.S.C. § 6672; Slodov, 436 U.S. at 247; Erwin, 591 F.3d at 319. To hold a company's officer or agent personally liable, that person must be "(1) responsible for collecting, accounting for, and remitting payroll taxes, and (2) [] willfully fail to do so." Plett, 185 F.3d at 218; see Johnson, 734 F.3d at 359; Erwin, 591 F.3d at 319; O'Connor v. United States, 956 F.2d 48, 50 (4th Cir. 1992); Webb-Smith, 2014 WL 4322387, at *2.

A person is "responsible" for collecting trust fund taxes if "the person had 'effective power' to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." Johnson, 734 F.3d at 361 (quotation and alteration omitted); see Erwin, 591 F.3d at 320–21; Plett, 185 F.3d at 219; Barnett v. I.R.S., 988 F.2d 1449, 1454 (5th Cir. 1999); Webb-Smith, 2014 WL 4322387, at *2. To determine whether a person is a "responsible person," courts consider whether the person: "(1) served as an officer or director of the company; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the corporation's day-to-day management; (5) had the ability to hire and fire

6

employees; and (6) possessed the power to write checks." Erwin, 591 F.3d at 321; see Johnson, 734 F.3d at 361; Plett, 185 F.3d at 219; O'Connor, 956 F.2d at 51; Webb-Smith, 2014 WL 4322387, at *2; Vaughn v. I.R.S., No. 4:11-CV-222-FL, 2012 WL 3637141, at *4 (E.D.N.C. July 16, 2012) (unpublished). Nevertheless, the statute "is not meant to ensnare those who have merely technical authority or titular designation." Fiataruolo v. United States, 8 F.3d 930, 939 (2d Cir. 1993); see Johnson, 734 F.3d at 361; Erwin, 591 F.3d at 320; O'Connor, 956 F.2d at 51; Webb-Smith, 2014 WL 4322387, at *3.

A responsible person "willfully" fails to collect and remit trust fund taxes to the United States when the responsible person "had knowledge of nonpayment or reckless disregard of whether the payments were being made." Johnson, 734 F.3d at 364 (quotation omitted); see Erwin, 591 F.3d at 325; Plett, 185 F.3d at 219; Turpin v. United States, 970 F.2d 1344, 1347 (4th Cir. 1992); Teel v. United States, 529 F.2d 903, 905 (9th Cir. 1976). Intentionally preferring other creditors over the United States establishes willfulness. See Plett, 185 F.3d at 219; Turpin, 970 F.2d at 1347; United States v. Pomponio, 635 F.2d 293, 298 n.5 (4th Cir. 1980).

The law imposes a "broad net of liability" for willful failure to collect and remit trust fund taxes. Bowlen v. United States, 956 F.2d 723, 728 (7th Cir. 1992); see O'Connor, 956 F.2d at 50 (noting "[t]he term 'responsible person' is broad"). A responsible person who willfully fails to collect and remit trust fund taxes to the United States is personally liable for "the total amount of the tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672(a). Although the statute labels the liability a "penalty," it is "not primarily a punitive provision as it brings to the government only the same amount to which it was entitled by way of the tax." Johnson, 734 F.3d at 359 (quotation omitted); see Turnbull v. United States, 929 F.2d 173, 178 n.6 (5th Cir. 1991).

7

Initially, the government bears the burden for identifying and assessing liability for willful failure to collect and remit trust fund taxes. "An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes. . . . [A]n assessment is entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against a taxpayer in court." United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002); see United States v. Register, 717 F. Supp. 2d 517, 522 (E.D. Va. 2010) ("[T]he Government can establish a prima facie case in support of tax liability by showing that an assessment has been made against a defendant." (emphasis omitted)). The government can show it made an assessment against a defendant "by offering a Certificate of Assessments and Payments." Register, 717 F. Supp. 2d at 522; see Pomponio, 635 F.2d at 296. These certificates carry a presumption of correctness. See United States v. Janis, 428 U.S. 433, 440–41 (1976); United States v. Bennett, No. 7:17-cv-411, 2019 WL 1141092, at *5 (W.D. Va. Feb. 14, 2019) (unpublished), report and recommendation adopted, 2019 WL 1140219 (W.D. Va. Mar. 12, 2019) (unpublished); Register, 717 F. Supp. 2d at 522.

"Once the IRS assesses a taxpayer for this liability, the taxpayer has the burden of proof at trial on both elements of § 6672 liability." Johnson, 734 F.3d at 359; Erwin, 591 F.3d at 319; O'Connor, 956 F.2d at 50; cf. Welch v. Helvering, 290 U.S. 111, 115 (1933). To meet his burden, the taxpayer's own testimony, standing alone, is insufficient. See Liddy v. Comm'r of Internal Revenue, 808 F.2d 312, 316 (4th Cir. 1986). If it were sufficient, it would undermine the government's presumption of correctness because the taxpayer will always give testimony favorable to his argument. See id.; Laney v. Comm'r of Internal Revenue, 674 F.2d 342, 350 (5th Cir. 1982).

Craft was a "responsible person" and had the "effective power" to pay Microcraft's taxes. Plett, 185 F.3d at 219. Craft was the president of Microcraft for the relevant time period. See Craft

8

Dep. [D.E. 22-5] 5; [D.E. 22-7] 11; Craft Aff. [D.E. 30-1] ¶ 3. In Craft's own words, he "pretty much did everything" for Microcraft. Craft Dep. [D.E. 22-5] 4–5. Craft maintained Microcraft's bank accounts. See id. at 11; [D.E. 22-7] 12; [D.E. 30-3] 2. Craft had authority to sign checks on behalf of Microcraft. See [D.E. 30-3] 2. Craft managed the company's "leases, insurance, accounts payable, [and] accounts receivable." Craft Dep. [D.E. 22-5] 4–5; see [D.E. 22-7] 12; [D.E. 30-3] 1–2. Craft oversaw "the preparation of, or facilitation of," Microcraft's "payroll tax returns." [D.E. 22-7] 13; see Craft Dep. [D.E. 22-5] 14. Craft signed all of the company's quarterly tax returns. See Craft Dep. [D.E. 22-5] 14; [D.E. 22-7] 9; [D.E. 30-3] 2–3. Craft bore responsibility for sending the tax payment to the IRS. See Craft Dep. [D.E. 22-5] 14. Craft also had the power to hire and fire employees. See id. at 5; [D.E. 30-3] 2. Thus, Craft was a "responsible person" for the purposes of section 6672 liability.

Craft willfully failed to collect and remit trust fund taxes to the United States. Craft knew Microcraft was not paying its quarterly trust fund taxes from 2002 to 2005. See Craft Dep. [D.E. 22-5] 10, 14; cf. Plett, 185 F.3d at 219. Craft knew the taxes were unpaid "when [he] didn't send the check" to the IRS. Craft Dep. [D.E. 22-5] 14. Thus, Craft willfully failed to send trust fund taxes to the IRS that he knew were due. Alternatively, from 2002 to 2005, Craft continued to pay creditors other than the United States because he paid rent, utilities, insurance premiums, and his own and his employees' salaries. See id. at 6, 14. Paying other creditors besides the United States establishes willfulness. See Plett, 185 F.3d at 219; Turpin, 970 F.2d at 1347; Pomponio, 635 F.2d at 298 n.5.

No genuine issue of material fact exists regarding the amount Craft owes. The government has produced certificates of assessment showing the amounts it assessed Craft for the unpaid trust fund taxes. See [D.E. 22-4]. Added up, Craft owes $1,121,188.71. See Billingsley Decl. [D.E. 22-1] ¶¶ 11–12. The government's certificates are presumptively correct. See Fior D'Italia, 536 U.S.

9

at 242; Register, 717 F. Supp. 2d at 522. Craft has not created a genuine issue of material fact rebutting that presumption. Cf. [D.E. 30]. Craft's testimony, standing alone, is insufficient. See Liddy, 808 F.2d at 316.

Craft is personally liable for the unpaid trust fund taxes because he was a "responsible person" at Microcraft who willfully failed to collect and remit trust fund taxes that Microcraft owed to the United States. See Johnson, 734 F.3d at 359; Erwin, 591 F.3d at 319; Plett, 185 F.3d at 218; O'Connor, 956 F.2d at 50. Thus, the court grants the government's motion for summary judgment. Craft is liable for the full unpaid amount of $1,121,188.71.

B.

In opposition, Craft argues that granting summary judgment: (1) will not promote effective tax administration because it will create economic hardship for Craft and (2) is barred by equitable estoppel. See [D.E. 30] 4–7. The court rejects Craft's arguments.

Granting summary judgment will not impede effective tax administration. The IRS has authority to compromise civil tax liabilities to promote effective tax administration. See [D.E. 30] 4; 26 U.S.C. § 7122(a); 26 C.F.R. § 301.7122-1(b)(3). Such compromises, however, are appropriate "only prior to—not after—their transfer to the" Department of Justice ("DOJ"). Johnson v. United States, 610 F. Supp. 2d 491, 498 (D. Md. 2009); see 26 U.S.C. § 7122(a) (authorizing compromises "prior to reference to the [DOJ] for prosecution or defense"); Brooks v. United States, 833 F.2d 1136, 1145–46 (4th Cir. 1987). Once the IRS refers a case to the DOJ, the Attorney General has authority to compromise tax liability. See 26 U.S.C. § 7122(a). The DOJ has not compromised this case, apparently believing that a compromise would not promote effective tax administration. See [D.E. 31] 1–2. Even assuming that grounds exist warranting a compromise in light of the financial burden summary judgment may impose on Craft, this court could not order the DOJ to compromise

10

this case because "[s]ection 7122 is the exclusive method by which tax cases may be compromised." Brooks, 833 F.2d at 1145.

Equitable estoppel does not bar summary judgment. "Equitable estoppel against the government is strongly disfavored." Volvo Trucks of N. Am., Inc. v. United States, 367 F.3d 204, 211–12 (4th Cir. 2004); see Greenbelt Ventures, LLC v. Wash. Metro. Area Transit Auth., 481 F. App'x. 833, 838 (4th Cir. 2012) (per curiam) (unpublished); Miller v. United States, No. 2:11-cv-03026-DCN, 2012 WL 6674492, at *4 (D.S.C. Dec. 21, 2012) (unpublished); Nagy v. United States, No. 2:08-cv-2555-DCN, 2009 WL 5194996, at *4 n.6 (D.S.C. Dec. 22, 2009) (unpublished), aff'd, 519 F. App'x 137 (4th Cir. 2013) (per curiam) (unpublished). "If equitable estoppel ever applies to prevent the government from enforcing its duly enacted laws, it would only apply in extremely rare circumstances." Volvo, 367 F.3d at 211–12; see Taylor v. United States, 89 F. Supp. 3d 766, 777 n.5 (E.D.N.C. 2014). Those rare circumstances may exist, "if ever," because of "affirmative misconduct by government agents." Dawkins v. Witt, 318 F.3d 606, 611 (4th Cir. 2003).

For equitable estoppel to apply, Craft must demonstrate that: "(1) the party to be estopped knew the true facts; (2) the party to be estopped intended for his conduct to be acted upon or acted in such a way that the party asserting estoppel had a right to believe that it was intended; (3) the party claiming estoppel was ignorant of the true facts; and (4) the misconduct was relied upon to the detriment of the parties seeking estoppel." Id. at 611 n.6 (quotation omitted); see Miller, 2012 WL 6674492, at *4.

Craft argues that the court should estop the government from seeking summary judgment because Craft believed Weeman had authority to make a payment arrangement with Craft, and Craft detrimentally relied on that belief by completing the Form 433-A for Weeman. See [D.E. 30] 5–7. This argument does not relate to whether Craft was a responsible person for the purposes of section

11

6672 liability, whether Craft knew that Microcraft had unpaid trust fund taxes, or whether Weeman or anyone else misrepresented to Craft the amount he owed or when it was due. As for Craft's interactions with Weeman, no evidence suggests that Weeman acted in bad faith, misrepresented his authority to Craft, or otherwise engaged in affirmative misconduct that would warrant applying equitable estoppel against the government. Although Craft was disappointed that the IRS denied him the opportunity to make a payment arrangement after assessing his situation as presented in the Form 433-A, that denial does not warrant equitable estoppel. Accordingly, the court rejects Craft's defenses.

III.

In sum, the court GRANTS the plaintiff's motion for summary judgment [D.E. 19] and finds defendant liable for $1,121,188.71.

SO ORDERED. This 22 day of September, 2021.

JAMES C. DEVER III
United States District Judge

12